```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

**DAVID RUSTY McGINTY**                                          **PLAINTIFF/**
                                                         **COUNTER DEFENDANT**


**VS.**                              **CIVIL ACTION NO. 3:07-cv-715-WHB-LRA**


**ACUITY SPECIALITY PRODUCTS GROUP, INC.**                        **DEFENDANT/**
                                                         **COUNTER PLAINTIFF**


<u>**OPINION AND ORDER**</u>

This cause is before the Court on the Motion of Defendant for Summary Judgment. The Court, having considered the Motion, Response, Rebuttal, attachments to the pleadings as well as supporting and opposing authorities finds that the Motion should be granted in part, and denied in part.


### I. Factual Background and Procedural History

Plaintiff, David Rusty McGinty ("McGinty"), began working as a Food Industry Specialist for Defendant, Acuity Speciality Products Group, Inc. ("Acuity"), in January of 1998. McGinty was employed as a salaried sales representative whose primary duty was to sell/provide industrial cleaning products to customers for use in their poultry processing plants. In the course of his employment, McGinty "entertained" Acuity customers by taking them on hunting trips, to dinner, and to adult entertainment

establishments.

According to Acuity, in January of 2007, McGinty attempted to establish his father's hunting club as a vendor without properly disclosing his conflict of interest as required under Acuity policy. Acuity purportedly learned of the existing conflict after McGinty requested reimbursement for $5,950.00 that he had paid to the hunting club, and Acuity contacted the hunting club regarding the requested reimbursement. Thereafter, Acuity conducted an investigative audit, which revealed, *inter alia*, that McGinty:

Submitted two expense reports for the week of September 19 through 25, 2005, each requesting different milage reimbursements, and submitted two expense reports for the week of September 26 through October 2, 2005, each requesting different milage reimbursements;

Altered and submitted the same receipt, dated September 23, 2005, for reimbursement for a dove hunt first on September 8, 2005, for a dove hunt with Tyson Food employees, and again on October 23, 2005, for a dove hunt with Sanderson Farm employees;

Submitted two additional expense requests for reimbursement for a hunting trip to Dreamlake Hunting Club even though he had already been fully reimbursed for that trip; and

Failed to disclose a conflict of interest that existed between him and the owners of The Steakhouse in Yazoo City, Mississippi, a restaurant to which he took Acuity customers to dine.

2

Following the investigation, McGinty was terminated from his employment on May 31, 2007.

According to McGinty, the accusations made by Acuity, i.e. that he submitted false expense reports and made improper payments to family members in violation of company policy, are false. Specifically, McGinty alleges that: "all of the questioned expenses were not only paid in accordance with [Acuity's] actual policies, but were previously approved by [Acuity]. Additionally, [Acuity] had actually instructed and taught [him] which expenses he could submit for reimbursement and how to do so in accordance with the actual company policy." Compl., ¶ 9. McGinty also claims that Acuity has "repeated the allegations of wrongdoing against [him] to numerous persons" which has "had a severe impact upon [his] employability and has disrupted years-long friendships among [him], his former customers and friends." Id., ¶ 10.

On October 8, 2007, McGinty filed a Complaint against Acuity in the Circuit Court for the First Judicial of Hinds County, Mississippi, alleging claims of defamation, breach of contract, outrage, intentional and/or negligent infliction of emotional distress, and tortious interference with business relations. The case was removed to this Court on the basis of diversity of citizenship jurisdiction.[1] In addition to answering the Complaint,

---

[1] For the purpose of diversity analysis, McGinty is a citizen of the State of Mississippi, and Acuity is a Delaware corporation with its principal place of business in the State of

Acuity filed a counterclaim against McGinty seeking, *inter alia*, compensatory and punitive damages on claims of fraud, breach of fiduciary duty, conversion, and unjust enrichment, all of which arise from the allegedly false claims McGinty submitted for reimbursement. Acuity has now moved for summary judgment on both McGinty's claims and its counterclaims, all of which are governed by Mississippi law.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that

---

Georgia. Although the Complaint does not specify the amount in actual and punitive damages sought by McGinty, in the Notice of Removal Acuity alleges, and McGinty does not dispute, that the amount in controversy in this case exceeds $75,000.00. Based on the damages, the nature of the claims alleged, and the damages sought, the Court finds it is apparent from the face of the Complaint that he is seeking damages in an amount greater than $75,000. See Lundy v. Cliburn Truck Lines, Inc., 397 F. Supp. 2d 823, 828 (S. D. Miss. 2005) (finding that the amount in controversy was satisfied based on the plaintiff's silence regarding the allegations in the notice of removal and the nature of her claims). See also Barahona Rodriguez v. Kivitt's Inc., Civil Action No. 3:05-cv-738, 2006 WL 2645190, at *1 (S.D. Miss. Sept. 12, 2006) (same).

4

this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes

5

by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**III. Legal Analysis**

**A. McGinty's Claims**

Acuity has moved for summary judgment on McGinty's claims of defamation, breach of contract, outrage, intentional and/or negligent infliction of emotional distress, and tortious interference with business relations. In response, McGinty has conceded all but his defamation claim. See Pl.'s Combined Resp. [Docket No. 41], ¶ 1. Accordingly, the Court finds that Acuity is entitled to summary judgment on McGinty's claims of breach of contract, outrage,[2] intentional and/or negligent infliction of emotional distress, and tortious interference with business relations.

Under Mississippi law, to recover on a claim of defamation,

---

[2] Under Mississippi law, a claim of outrage is a claim of intentional infliction of emotional distress. See e.g. Donald v. Amoco Prod. Co., 735 So. 2d 161, 179 (Miss. 1999) ("[I]n Mississippi, this Court has recognized outrageous conduct as a tort more commonly known as the intentional infliction of emotional distress.").

6

the plaintiff must prove the following elements: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability irrespective of special harm or existence of special harm caused by the publication." Richard v. Supervalu, Inc. 974 So. 2d 944, 949 (Miss. Ct. App. 2008) (citing Armistead v. Minor, 815 So. 2d 1189, 1193 (Miss. 2002)). Mississippi law also recognizes that "a statement that would normally be actionable" for the purpose of maintain a defamation claim "may be privileged if it was 'made in good faith on any subject matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty....'" Id. at 949–50 (quoting Downtown Grill, Inc. v. Connell, 721 So. 2d 1113, 1119 (Miss. 1998)). If a qualified privilege exists, the court must then determine whether it is overcome by malice, bad faith, or abuse. Eckman v. Cooper Tire & Rubber Co., 893 So. 2d 1049, 1052 (Miss. 2005)(citing Garziano v. E.I. Dupont de Nemours & Co., 818 F.2d 380, 386–87 (5th Cir.1987) (applying Mississippi law)). As more fully explained by the Mississippi Supreme Court in Smith v. White, 799 So. 2d 83, 86 (Miss. 2001), a qualified privilege applies to:

> A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding

7

> interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

Smith, 799 So. 2d at 86.

In response to the Motion for Summary Judgment, McGinty argues that Acuity made defamatory statements regarding him to the Mississippi Employment Security Commission ("MESC"). In support of this claim, McGinty cites to the Notice of Nonmonetary Determination Decision that was made by the Mississippi Department of Employment Security on or about July 19, 2007, which provides, in relevant part: "An investigation reveals you were discharged when the employer determined you falsified company documents." See Pl.'s Combined Resp., Ex. A.

Under Mississippi law, communications between an employer and the MESC are privileged unless shown to be false or malicious. Specifically, Mississippi Code Annotated Section 71-5-131 provides:

> All letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the department or any of its agents, representatives or employees, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the State of Mississippi unless the same be false in fact and maliciously written, sent, delivered or made for the purpose of causing a denial of benefits under this chapter.

See also Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004) (finding that an employer's statement was absolutely privileged "because it was made during the course of the MESC

8

hearing.").

In the case *sub judice*, McGinty has not presented any evidence to show that the statements made by Acuity to the MESC were made with malice or for the purpose of causing a denial of benefits. Although McGinty argues that the statements made by Acuity were false because he submitted all of his reimbursement requests in accordance with company policy and as instructed by his supervisors, the evidence presented by Acuity shows that McGinty submitted duplicitous expense requests, that he altered receipts and submitted them for reimbursement, and that he submitted additional expense requests even though he had already been fully compensated for the underlying expenses. Based on the evidence before it, the Court finds that McGinty has failed to establish a genuine issue of material fact with regard to whether the statements made by Acuity to the MSEC were "false in fact" and, therefore, has failed to establish a genuine issue of material fact with regard to whether the subject statements are privileged under Mississippi Code Annotated Section 71-5-131.

Next, McGinty argues that Acuity made defamatory statements to him by virtue of the letter he received when his employment was terminated. The Court finds that this argument does not create an actionable defamation claim because first, it does not establish that there was "an unprivileged publication to a third party" as required to maintain such claim under Mississippi law. Second,

9

because both Acuity and McGinty had a "legitimate and direct interest in the subject matter" of the letter, i.e. the reason for his termination, and McGinty has not presented any evidence to show malice or bad faith on the part of Acuity, the letter and any statements made to him regarding the reasons for his termination are privileged under Mississippi law. See e.g. Young v. Jackson, 572 So. 2d 378, 383 (Miss. 1990) (finding that "a qualified privilege exists between those directly interested in the same manner and in the absence of malice, no cause of action lies" and that "[w]hen qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter.")(citations omitted). See also Raiola, 872 So. 2d at 85 (finding that a qualified privilege existed "because any statement made by an employer against an employee when the statement in question affects the employee's employment is protected by a qualified privilege.").

Finally, McGinty argues that Acuity made defamatory statements to third parties, specifically his former co-employees, regarding the reason for his termination. In response to the motion for summary judgment, however, McGinty concedes that he has no evidence that such statements were made. See Pl.'s Combined Resp., Ex. B, (McGinty Aff.) ¶ 2 ("Although I currently have no direct proof that

10

Acuity made the defamatory statements to third parties other than the Mississippi Department of Employment Security, I know that many of my former friends and customers now avoid myself and my father...")(emphasis added). In addition, even if Acuity told McGinty's co-employees that he was terminated for submitting false reimbursement requests, those statements would not be actionable as, under Mississippi law, "a company's employees have a legitimate and direct interest regarding the reasons for a co-worker's dismissal." Raiola, 872 So. 2d at 85 (citing Garziano v. E.I. DuPont De Nemours & Co., 818 F.2d 380, 387 (5th Cir. 1987) and Benson v. Hall, 339 So. 2d 570, 573 (Miss. 1976)). Accordingly, the Court finds that McGinty has failed to show that there exists a genuine issue of material fact with regard to whether Acuity made actionable defamatory statements to third parties. Additionally, the Court finds, assuming *arguendo* that Acuity did inform McGinty's co-employees of the reason for his termination, that such statements are not actionable under Mississippi law.

In sum, the Court finds that McGinty has failed to establish a genuine issue of material fact with regard to (1) whether Acuity made any defamatory statements regarding him to third parties, and (2) whether such statements, if made, would not be privileged. Accordingly, the Court finds that Acuity is entitled to summary judgment on McGinty's defamation claim.

**B. Counterclaims of Acuity**

Acuity has filed counterclaims of fraud, breach of fiduciary duty, conversion, and unjust enrichment, all of which arise from the allegedly false claims McGinty submitted for reimbursement.

Under Mississippi law, "[t]o make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." Community Bank, Ellisville, Mississippi v. Courtney, 884 So. 2d 767, 772-73 (Miss. 2004)(citations omitted). Similarly, to establish a claim of unjust enrichment, the plaintiff must "show that the defendant holds money which in equity and good conscience belongs to the plaintiff." Owens Corning v. R.J. Reynolds Tobacco Co., 868 So. 2d 331, 342 (Miss. 2004). In the case *sub judice*, Acuity has presented evidence that McGinty submitted two separate reimbursement requests for mileage for the weeks of September 19, through the 25, 2005, and September 26, through October 2, 2005. McGinty, however, maintains that he was "taught that in order to be fully reimbursed, any expenses which were difficult to document could and should be made up by adding additional mileage onto expense reports." Pl.'s Combined Resp., Ex. B (McGinty Aff.), ¶ 2. Based on the evidence before it, the Court finds that there exists a fact issue regarding whether McGinty is in "wrongful possession" of money belonging to Acuity or whether he "holds money which in

12

equity and good conscience belongs" to Acuity. Accordingly, the Court finds that Acuity is not entitled to summary judgment on its counterclaims of conversion and unjust enrichment. Similarly, the Court finds that because there is a fact question as to whether McGinty was authorized to add additional mileage to his expense reports, there exists a genuine issue of material fact with regard to the counterclaims of breach of fiduciary duty and fraud, in particular with regard to whether Acuity has been damaged and, if so, the extent of compensation it is entitled to recover. Accordingly, the Court finds that Acuity is not entitled to summary judgment on its counterclaims of breach of fiduciary duty and fraud.

### IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant for Summary Judgment [Docket No. 36] is hereby granted in part, and denied in part.

To the extent the Motion seeks summary judgment on the plaintiff's claims of defamation, breach of contract, outrage, intentional and/or negligent infliction of emotional distress, and tortious interference with business relations, the Motion is granted, and these claims are dismissed with prejudice.

To the extent the Motion seeks summary judgment on the

13

defendant's counterclaims of fraud, breach of fiduciary duty, conversion, and unjust enrichment, the Motion is denied.

SO ORDERED this the 22nd day of January, 2009.

                                    s/William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE